# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 19-59740-wlh |
| KEIDRA AIESHA ALI-GADSON, | CHAPTER 13 |
| Debtor. | |

## MOTION TO SELL PROPERTY OF THE ESTATE

COME NOW the Debtors in the above-styled Chapter 13 case, and through counsel, files this "Motion to Sell Property of the Estate", showing to this Honorable Court the following:

1.

This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1334, 151 and 157.

2.

This Court is the proper venue for this matter pursuant to 28 U.S.C. Section 1409.

3.

This matter is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(N).

4.

The Debtors filed the petition for relief in the above-styled Chapter 13 case on June 24, 2019. The meeting of creditors was scheduled and held on for July 29, 2019. The case was confirmed on February 5, 2020 with a 0% dividend to unsecured creditors.

5.

As stated in the Chapter 13 schedules, the Debtor has an interest in property located at 1691 Tree Line Road, Lithonia, Georgia 30058, Dekalb County, with an obligation thereon to Wells Fargo Bank, N.A. in the approximate amount of $82,114.73. The property is also subject to an obligation thereon to the U.S. Department of Housing and Urban Development in the approximate amount of $9,760.60.

6.

The property is owned by the Debtor.

7.

The Debtors has received a contract for the purchase of the real property. The purchase price of the property is one hundred and ten thousand dollars ($110,000.00). The purchaser, Prestige Home Investments, LLC, is neither an insider nor relative of the Debtors. The Debtor believes that the purchase price represents the fair market value of the property. A copy of the purchase and sale agreement is attached hereto and incorporated herein as Exhibit "A."

8.

The proceeds of the sale are to be applied at closing to satisfy the costs of the sale as determined by the closing attorney pursuant to commonly accepted real estate standards and practices under Georgia law. The Debtor will retain any proceeds from the funds available to the Debtor after the sale, to purchase a new vehicle as hers no longer runs.

9.

Debtors believe that this sale is in the best interest of the estate and creditors and that such sale will assist in the effectuation of the Debtors' financial reorganization.

WHEREFORE, Debtor prays:

(a) that this Motion be filed, read and considered;

(b) that this Motion be granted; and,

(c) that this Honorable Court grant such other and further relief as it deems just and proper.

                                                                    Respectfully submitted,
/s/
Jason B. Lutz, GA Bar No. 670673
Attorney for Debtors

Clark & Washington, PC
3300 Northeast Expwy Bldg 3
Atlanta, GA 30341
Phone: 404-522-2222
Fax: 770-220-0685
Email: ecfnotices@cw13.com

19-59740-WLH

# PURCHASE AND SALE AGREEMENT

Offer Date: 7/31/2020


Georgia REALTORS

2020 Printing

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. Property Identification: Address: __1691 Tree Line Road__
      City __Lithonia__, County __Dekalb__, Georgia, Zip Code __30058__
      MLS Number: __N/A__ Tax Parcel I.D. Number: _____
   b. Legal Description: The legal description of the Property is [select one of the following below]:
      ☐ (1) attached as an exhibit hereto;
      ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
      ☒ (3) the same as described in Deed Book __24165__, Page __260__, et. seq., of the land records of the above county; OR
      ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
           Lot _____, Block _____, Unit _____, Phase/Section _____
           of _____ Subdivision/Development, according
           to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

| 2. Purchase Price of Property to be Paid by Buyer.<br>$ 110,000 | 3. Closing Costs.<br>Seller's Contribution at Closing: $ 0 |
|---|---|
| 4. Closing Date and Possession.<br>Closing Date shall be __September 16th, 2020__ with possession of the Property transferred to Buyer<br>☒ at Closing OR ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement). | |
| 5. Holder of Earnest Money ("Holder"). (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)<br>Ganek PC in Lawrenceville | 6. Closing Attorney/Law Firm.<br>Ganek PC in Lawrenceville 678 376 8008 |

7. **Earnest Money.** Earnest Money shall be paid by ☐ check ☐ cash or ☒ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☒ b. $ __1,000__ within __2__ days from the Binding Agreement Date.
   ☐ c. _____

8. **Inspection and Due Diligence.**
   a. Due Diligence Period: Property is being sold subject to a Due Diligence Period of __0__ days from the Binding Agreement Date.
   b. Option Payment for Due Diligence Period: In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
      (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
      (2) shall pay Seller additional option money of $ _____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; OR ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) OR ☒ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. Selling Broker is __N/A__ and is:
       (1) ☐ representing Buyer as a client.
       (2) ☐ working with Buyer as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
           _____ has been assigned to exclusively represent Buyer.
    b. Listing Broker is __N/A__ and is:
       (1) ☐ representing Seller as a client.
       (2) ☐ working with Seller as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
           _____ has been assigned to exclusively represent Seller.
    c. Material Relationship Disclosure: The material relationships required to be disclosed by either Broker are as follows:
       _____

11. **Time Limit of Offer.** The Offer set forth herein expires at __5__ o'clock __p__.m. on the date __8/2/2020__
    Buyer(s) Initials _____ Seller(s) Initials _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Mehbe Omar__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2020 by Georgia Association of REALTORS®, Inc.    F201, Purchase and Sale Agreement, Page 1 of 8, 01/01/20

B. CORRESPONDING PARAGRAPHS FOR SECTION A

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
        (1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        (2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
            i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
                (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
                (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
                (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
                (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
            ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
    b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.
    c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

C. **OTHER TERMS AND CONDITIONS**

1. **Notices.**
    a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
    b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.
   b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.
   c. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
   d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
   b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.
   c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
   f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

  g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
  h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
  i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party. Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it may only be resolved by the written agreement of the Buyer and Seller.
  j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.
  k. **Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.
  l. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.
  m. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.
  n. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**
  a. **Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.
  b. **Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.
  c. **Broker:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.
  d. **Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.
  e. **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

6. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

7. **LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):
   a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND
   b. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

8. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:
   - ☐ All Cash Sale Exhibit (F401) "_____"
   - ☐ Back-up Agreement Contingency Exhibit (F604) "_____"
   - ☒ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "__A__"
   - ☐ Community Association Disclosure Exhibit (F322) "_____"
   - ☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
   - ☐ Conventional Loan Contingency Exhibit (F404) "_____"
   - ☐ FHA Loan Contingency Exhibit (F407) "_____"
   - ☐ Lead-Based Paint Exhibit (F316) "_____"
   - ☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
   - ☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
   - ☐ Legal Description Exhibit (F807 or other) "_____"
   - ☐ Loan Assumption Exhibit (F416) "_____"
   - ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
   - ☐ Seller's Property Disclosure Statement Exhibit (F301, F304, F307 or F310) "_____"
   - ☐ Survey of Property as Exhibit "_____"
   - ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
   - ☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
   - ☐ VA Loan Contingency Exhibit (F410) "_____"
   - ☐ Other _____
   - ☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. This is Cash Transaction.
2. A member of Prestige Home Investments, LLC is a real estate licensee in the State of Georgia.
3. Property must be vacant prior to close.

☐ Additional Special Stipulations are attached.

**Buyer Acceptance and Contact Information**

**1 Buyer's Signature** [signature]
Prestige Home Investments, LLC by Nizar Omar
Print or Type Name _____ Date
5945 Peachtree Corners East, Norcross GA 30071
Buyer's Address for Receiving Notice

770 560 5069
Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

**2 Buyer's Signature** _____ Date
Print or Type Name
Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Selling Broker/Affiliated Licensee Contact Information**
N/A
Selling Brokerage Firm

**Seller Acceptance and Contact Information**

**1 Seller's Signature**
Keidra Ali - Gadson
Print or Type Name _____ Date

Seller's Address for Receiving Notice

678 491 5253
Seller's Phone Number: ☒ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

**2 Seller's Signature** _____ Date
Print or Type Name
Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ Additional Signature Page (F267) is attached.

**Listing Broker/Affiliated Licensee Contact Information**
N/A
Listing Broker Firm

# CLOSING ATTORNEY ACTING AS
# HOLDER OF EARNEST MONEY
# EXHIBIT " A "

[Closing Attorney must still consent to serve as Holder using F511]



**GeorgiaREALTORS**

2020 Printing

This Exhibit is part of the Agreement with an Offer Date of __7/31/2020__ for the purchase and sale of that certain property known as: __1691 Tree Line Rd, Lithonia__, Georgia __30058__ ("Agreement").

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.

2. **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.

3. **Closing Attorney Must Agree to Become Holder Within Three (3) Business Days of Receiving Entire Contract.** The Closing Attorney named as Holder shall not become the Holder unless within three (3) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.

4. **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder.

5. **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.

6. **Failure of Closing Attorney to Timely Agree to Become Holder; Resignation of Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder, fails to timely become Holder or becomes Holder but later resigns, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.

7. **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.

8. **Alternate Holder.** The Alternate Holder, who must be a broker in this transaction, shall be _____

9. **Notices To and From Holder.** The notice procedures in the Agreement shall control with regard to all notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.

10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction.

    Closing Attorney: __Ganek PC__
    Address: __1735 North Brown Road, Suite 150, Lawrenceville GA 30043__

    Phone Number: __678 376 8008__
    Fax Number: __678 376 9970__
    Email: __KristyR@titlelaw.com__

    Buyer's Initials: __[initialed]__         Seller's Initials: _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __Mehbs Omar__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2020 by Georgia Association of REALTORS®, Inc.         F510, Closing Attorney Acting as Holder of Earnest Money Exhibit, 05/01/20

|  | MLS Beds<br>4 | MLS Sq Ft<br>1,617 | Lot Sq Ft<br>17,424 | MLS Sale Price<br>$85,000 |
|---|---|---|---|---|
|  | MLS Baths<br>3 | Yr Built<br>1986 | Type<br>SFR | MLS Sale Date<br>11/22/2013 |

### OWNER INFORMATION

| | | | |
|---|---|---|---|
| Owner Name | Al Gadson Keidra | Tax Billing Zip | 30058 |
| Tax Billing Address | 1691 Tree Line Rd | Tax Billing Zip+4 | 5675 |
| Tax Billing City & State | Lithonia, GA | Owner Occupied | Yes |

### LOCATION INFORMATION

| | | | |
|---|---|---|---|
| Subdivision | Ridgefield North | Zoning | R100 |
| Municipality/Township | Unincorporated | Flood Zone Code | AE |
| Census Tract | 233.14 | Flood Zone Panel | 13089C0157J |
| Carrier Route | C015 | Flood Zone Date | 05/16/2013 |
| Neighborhood Code | 1900 | | |

### TAX INFORMATION

| | | | |
|---|---|---|---|
| Tax ID | 16-069-04-032 | Lot No. | 24 |
| Parcel ID | 16 069 04 032 | % Improved | 89% |
| Alt APN | 1950651 | Tax District Area | 04 |
| Block No. | E | County Tax | $1,126 |
| Legal Description | RIDGEFIELD NORTH BLOCK E UNIT 24 125X266X15X230 0.39AC | | |

### ASSESSMENT & TAX

| Assessment Year | 2019 | 2018 | 2017 |
|---|---|---|---|
| Assessed Value - Total | $41,200 | $41,760 | $34,680 |
| Assessed Value - Land | $4,360 | $4,360 | $4,360 |
| Assessed Value - Improved | $36,840 | $37,400 | $30,320 |
| YOY Assessed Change ($) | -$560 | $7,080 | |
| YOY Assessed Change (%) | -1.34% | 20.42% | |
| Market Value - Total | $103,000 | $104,400 | $86,700 |
| Market Value - Land | $10,900 | $10,900 | $10,900 |
| Market Value - Improved | $92,100 | $93,500 | $75,800 |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2017 | $988 | | |
| 2018 | $1,138 | $149 | 15.12% |
| 2019 | $1,126 | -$12 | -1.06% |

### CHARACTERISTICS

| | | | |
|---|---|---|---|
| Land Use - Universal | SFR | Full Baths | Tax: 2 MLS: 3 |
| Land Use - County | Residential | Basement Sq Feet | 438 |
| Lot Acres | 0.4 | Cooling Type | Central |
| Lot Area | 17,424 | Interior Wall | Drywall |
| # of Buildings | 1 | Exterior | Frame |
| Year Built | 1986 | No. Parking Spaces | MLS: 2 |
| Stories | 1 | Parking Type | Built-In Garage |
| Style | Bi-Level | Garage Type | Built-In |
| Building Sq Ft | 1,617 | Garage Capacity | MLS: 2 |
| Gross Area | Tax: 2,305 MLS: 1,617 | Garage Sq Ft | 250 |
| Above Gnd Sq Ft | 1,617 | Patio Type | Wood Deck |
| Bedrooms | 4 | Patio/Deck 1 Area | 156 |
| Total Baths | 2 | Condition | Average |

### FEATURES

| Feature Type | Unit | Size/Qty |
|---|---|---|
| Split Foyer | S | 1,125 |
| L/L Frame Finish | S | 437 |
| L/L Frame Unfinished | S | 432 |
| Garage Frame Built In | S | 250 |
| Garage Frame 1 Story | S | 250 |
| Wood Deck | S | 156 |
| Patio | S | 60 |
| Overhang | S | 55 |

### SELL SCORE

| | | | |
|---|---|---|---|
| Rating | Low | Value As Of | 2020-07-13 23:04:39 |
| Sell Score | 487 | | |

### ESTIMATED VALUE

| | | | |
|---|---|---|---|
| RealAVM™ | $150,700 | Confidence Score | 58 |
| RealAVM™ Range | $131,109 - $170,291 | Forecast Standard Deviation | 13 |
| Value As Of | 07/25/2020 | | |

(1) RealAVM™ is a CoreLogic® derived value and should not be used in lieu of an appraisal.

(2) The Confidence Score is a measure of the extent to which sales data, property information, and comparable sales support the property valuation analysis process. The confidence score range is 60 - 100. Clear and consistent quality and quantity of data drive higher confidence scores while lower confidence scores indicate diversity in data, lower quality and quantity of data, and/or limited similarity of the subject property to comparable sales.

(3) The FSD denotes confidence in an AVM estimate and uses a consistent scale and meaning to generate a standardized confidence metric. The FSD is a statistic that measures the likely range or dispersion an AVM estimate will fall within, based on the consistency of the information available to the AVM at the time of estimation. The FSD can be used to create confidence that the true value has a statistical degree of certainty.

### LISTING INFORMATION

| | | | |
|---|---|---|---|
| MLS Listing Number | 5202680 | MLS Orig. List Price | $85,000 |
| MLS Status | Closed | MLS Sale Date | 11/22/2013 |
| MLS Area | 42 - DEKALB-EAST | MLS Sale Price | $85,000 |
| MLS D.O.M | 14 | Listing Agent Name | Torresch-Christian Torres |
| MLS Listing Date | 09/30/2013 | Listing Broker Name | C A M AND ASSOCIATES REALTY CO |
| MLS Current List Price | $85,000 | | |

### LAST MARKET SALE & SALES HISTORY

| | | | |
|---|---|---|---|
| Recording Date | 12/09/2013 | Price Per Square Feet | $52.57 |
| Settle Date | Tax: 11/21/2013 MLS: 11/22/2013 | Deed Book & Page | 24165-260 |
| Sale Price | $85,000 | Deed Type | Warranty Deed |

| | | | | |
|---|---|---|---|---|
| Recording Date | 12/09/2013 | | | 11/01/1985 |
| Sale/Settlement Date | 11/21/2013 | 12/01/1986 | | 11/01/1985 |
| Sale Price | $85,000 | $83,300 | | |
| Deed Book & Page | 24165-260 | 5669-1 | | 5347-682 |
| Document Type | Warranty Deed | Deed (Reg) | | Deed (Reg) |
| Buyer Name | Al-Gadson Keidra | Brooks George W | | |
| Seller Name | Brooks George W & Thelma D | Adrian Co | | |

### MORTGAGE HISTORY

| | | | | | |
|---|---|---|---|---|---|
| Mortgage Date | 09/30/2016 | 09/13/2016 | 12/09/2013 | 02/18/2003 | |
| Mortgage Amount | $77,904 | $9,750 | $83,460 | $65,030 | $83,350 |
| Mortgage Lender | Wells Fargo Bk Na | Hud-Housing/Urban Dev | Academy Mtg Corp | Midfirst Bk | Gulf States Mtg Co Inc |
| Mortgage Code | Fha | Fha | Fha | Va | Va |
| Mortgage Type | Refi | Refi | Resale | Refi | Resale |



PROPERTY MAP

[Property map showing a triangular lot with dimensions 231', 266', 79', 47', and 17', bordered by Tree Line Rd and Bridge Creek. Second map shows area with Young Rd, Pole Bridge Rd, and other roads.]

*Lot Dimensions are Estimated



**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 19-59740-wlh |
| KEIDRA AIESHA ALI-GADSON, | CHAPTER 13 |
| Debtor. | |

**NOTICE OF HEARING ON MOTION TO SELL PROPERTY OF THE ESTATE**

**PLEASE TAKE NOTICE** that the above-referenced Debtors filed a *Motion* seeking *to Sell Property of the Estate*.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the matter in Courtroom 1403 of the United States Bankruptcy Court, 75 Ted Turner Drive, SW, Atlanta, GA, 30303, at 10:20AM, on September 23, 2020.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive, SW, Atlanta, GA, 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Respectfully submitted,
*/s/*_____
Jason B. Lutz, GA Bar No. 670673
Attorney for Debtors

Clark & Washington, PC
3300 Northeast Expwy Bldg 3
Atlanta, GA 30341
Phone: 404-522-2222
Fax: 770-220-0685
Email: ecfnotices@cw13.com

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify that I am over the age of 18 and that on this date I served a copy of the foregoing *Motion to Sell Property of the Estate* and *Notice of Hearing on Motion to Sell Property of the Estate* by first class U.S. Mail, with adequate postage prepaid on the following persons or entities at the addresses stated:

Keidra Aiesha Ali-Gadson
1691 Tree Line Rd
Lithonia  GA   30058

And, in the same manner, I served the parties listed in the attached matrix by mailing copies of the foregoing Motion and Notice to the addresses indicated therein.

I further certify that, by agreement of the parties, the Standing Chapter 13 Trustee, Melissa J. Davey, was served via the CM/ECF electronic mail/noticing system.

> Dated:  08/25/20
> Respectfully submitted,
> /s/_____
> Jason B. Lutz, GA Bar No. 670673
> Attorney for Debtors

Clark & Washington, PC
3300 Northeast Expwy Bldg 3
Atlanta, GA 30341
Phone: 404-522-2222
Fax: 770-220-0685
Email: ecfnotices@cw13.com

```
Label Matrix for local noticing         Keidra Aiesha Ali-Gadson              E. L. Clark
113E-1                                  1691 Tree Line Rd                      Clark & Washington, LLC
Case 19-59740-wlh                       Lithonia, GA 30058-5675                Bldg. 3
Northern District of Georgia                                                   3300 Northeast Expwy.
Atlanta                                                                        Atlanta, GA 30341-3932
Mon Aug 24 10:12:06 EDT 2020

Crown Realty & Manag                    Directv, LLC                           Abbey Ulsh Dreher
1702 Macy Dr                            by American InfoSource as agent        Barrett Daffin Frappier Turner Engel LLP
Roswell, GA 30076-6348                  4515 N Santa Fe Ave                    Suite 100
                                        Oklahoma City, OK 73118-7901           4004 Belt Line Road
                                                                               Addison, TX 75001-4320

(p)GEORGIA DEPARTMENT OF REVENUE        IRS                                    LaVerne Donaldson
COMPLIANCE DIVISION                     401 W. Peachtree St., NW               1691 TREELINE RD
ARCS BANKRUPTCY                         Stop #334-D                            Lithonia, GA 30058-5675
1800 CENTURY BLVD NE SUITE 9100         Room 400
ATLANTA GA 30345-3202                   Atlanta, GA 30308

Santander Consumer USA                  Santander Consumer USA Inc.            Source Receivables Mgmt, Llc
Attn: Bankruptcy                        Reg. Agent: C T Corporation System     Attn: Bankruptcy Dept
Po Box 961245                           289 S Culver Street                    4615 Dundas Dr., Suite 102
Fort Worth, TX 76161-0244               Lawrenceville, GA 30046-4805           Greensboro, NC 27407-1761

(p)SPRINT NEXTEL CORRESPONDENCE         T Mobile/T-Mobile USA Inc              (p)US DEPARTMENT OF HOUSING AND URBAN DEVELOP
ATTN BANKRUPTCY DEPT                    by American InfoSource as agent        ATTN ROBERT ZAYAC
PO BOX 7949                             4515 N Santa Fe Ave                    40 MARIETTA ST SUITE 300
OVERLAND PARK KS 66207-0949             Oklahoma City, OK 73118-7901           ATLANTA GA 30303-2812

United States Attorney                  WESTLAKE FINANCIAL SERVICES            Wells Fargo Bank, N.A.
Northern District of Georgia            4751 WILSHIRE BLVD                     DFLT Doc Processing N9286-01Y
75 Ted Turner Drive SW, Suite 600       SUITE 100                              1000 Blue Gentian Road
Atlanta GA 30303-3309                   LOS ANGELES CA 90010-3847              Eagan, MN 55121-7700

Wells Fargo Bank, N.A.                  Wells Fargo Dealer Services            Wells Fargo Home Mortgage
Timothy J. Sloan, CEO                   Attn: Bankruptcy                       Attn: Bankruptcy Dept
101 N. Phillips Avenue                  Po Box 19657                           P.O. Box 10335
Sioux Falls, SD 57104-6714              Irvine, CA 92623-9657                  Des Moines, IA 50306-0335

Westlake Financial Services             Nancy J. Whaley
Attn: Bankruptcy                        Nancy J. Whaley, Standing Ch. 13 Trustee
Po Box 76809                            303 Peachtree Center Avenue
Los Angeles, CA 90076-0809              Suite 120, Suntrust Garden Plaza
                                        Atlanta, GA 30303-1216
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Georgia Department of Revenue           Sprint Corp                            U.S. Department of Housing & Urban
Compliance Division                     Attention Bankruptcy                   Development
ARCS Bankruptcy                         PO Box 7949                            451 Seventh St SW
1800 Century BLVD NE Suite 9100         Overland Park, KS 66207-0949           Washington, DC 20410
Atlanta, GA 30345-3202
```

```
(d)U.S. Department of Housing and Urban Devel
451 7th Street S.W.
Washington, DC 20410
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)Wells Fargo Bank, N.A.                   End of Label Matrix
                                            Mailable recipients    22
                                            Bypassed recipients     1
                                            Total                  23
```